UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC W. POIRIER,

          Plaintiff,

        v.                                Case No. 23-cv-1401-scd

MICHAEL GIERACH, et al.,

          Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Eric Poirier, who is incarcerated at Redgranite Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment claims based on allegations that he received constitutionally inadequate dental care. On August 9, 2024, Defendants moved for summary judgment. For the reasons explained below, the Court will grant the motion and dismiss this case.

## PRELIMINARY MATTERS

Pursuant to the local rules, along with a motion for summary judgment, the moving party is required to file a statement of proposed material facts as to which it contends there is no dispute and that entitle it to judgment as a matter of law. Civil L. R. 56(b)(1). The statement of proposed facts should consist of numbered paragraphs containing short factual statements with specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L. R. 56(b)(1)(C). Defendants submitted proposed findings of fact in support of their summary judgment motion in compliance with the local rules. *See* Dkt. No. 25.

A party opposing a summary judgment motion must file a response to the moving party's proposed facts to make clear to the Court which, if any, of the proposed facts are in dispute. The opposing party must respond to *each* paragraph. Civil L. R. 56(b)(2)(B). Any uncontroverted fact is deemed admitted for the purpose of deciding summary judgment. Civil L. R. 56(b)(4).

Defendants, as required by the local rules, included Fed. R. Civ. P. 56, Civil L. R. 7, and Civil L. R. 56 along with their motion for summary judgment. *See* Dkt. No. 22. Moreover, a few days after Defendants moved for summary judgment, the Court entered a notice and order informing Poirier that he was required to "respond to each of the proposed findings of fact by agreeing with each fact or explaining why he disagrees with a particular proposed fact." The Court also clarified that "Poirier does not satisfy his obligations by simply filing a declaration with his version of the facts. Civil L. R. 56(b)(2)(B) requires Poirier to respond to *each* proposed fact." The Court warned Poirier that if he "does not respond to a proposed fact, the Court will assume that Poirier does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." Dkt. No. 31 at 1-2.

On August 26, 2024, Poirier filed a response to Defendants' legal brief, but he did not respond to Defendants' proposed facts. It appeared to the Court that Poirier had misunderstood the requirements of Civil L. R. 56, so the Court entered a text-only order clarifying that Poirier was required to respond to each of the Defendants' proposed facts. The Court again warned Poirier that "[u]ncontroverted statements of facts [would] be accepted as true for the purposes of deciding Defendants' summary judgment motion." The Court extended Poirier's deadline to (properly) respond to Defendants' motion to September 20, 2024. Poirier did not respond to Defendants' proposed findings of facts.

Accordingly, as Poirier was repeatedly warned, Defendants' proposed facts are deemed admitted for the purpose of deciding summary judgment. *See Phoneprasith v. Greff*, Case No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L. R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same). With these considerations in mind, the Court turns to the substance of Defendants' summary judgment motion.

## BACKGROUND

Poirier is an inmate currently confined at Redgranite Correctional Institution, where Defendant Angela Thompson works as the health services manager, Defendant Michael Gierach works as the warden, and Defendant Dr. Christopher Rauch works as a dentist. When a Redgranite inmate has a dental need, he must submit a dental service request form to the dental services unit. Dr. Rauch assigns the inmate to a waitlist depending on the nature of the request. There are two waitlists relevant to Poirier's claim: The routine waitlist and the essential waitlist. The "routine waitlist" is reserved for patients with asymptomatic dental conditions and for which a delay of up to a year would not result in serious risk. For example, patients with cavities, old but serviceable fillings, cosmetic needs, or denture repairs are typically placed on the routine waitlist. The "essential waitlist" is reserved for patients with chronic, asymptomatic conditions, which if not treated within eight weeks could result in an "acute episode." Patients on a waitlist are seen in the order their requests were received. The goal is to respond to essential needs within eight weeks and routine needs within forty weeks. However, during the time Poirier was waiting for treatment, wait times for routine needs lengthened significantly due to staff shortages, up to about seventeen months before additional part-time staffing again reduced the wait times. Dkt. No. 25 at ¶¶1-5; 17-19; 38-42, 46, 78, 197.

3

Prior to being housed at Redgranite, Poirier was housed at Waupun Correctional Institution. While at Waupun, on February 20, 2020, a dentist examined and x-rayed Poirier's teeth. The dentist explained to Poirier that because of advanced gum disease, areas of decay, and apical pathology, removal of his remaining teeth and transitioning to upper and lower complete dentures would be justified. The dentist recommended removing all of Poirier's teeth followed by a twelve-week healing period before creating the dentures. The dentist recommended treating the top teeth first and then the bottom teeth. Poirier consented, and on March 17, 2020 all of his top teeth were extracted. On April 15, 2020, Poirier had a follow-up appointment, at which time he informed the dentist he no longer wanted to have his bottom teeth removed. He signed a refusal for extraction. Dkt. No. 25 at ¶¶107-115.

More than a year later, on June 3, 2021, Poirier had an appointment for fitting of his top dentures. At that time, Poirier reported that he had broken a molar on the lower left side of his mouth. The dentist took an x-ray and determined the tooth was not savable, so he recommended extraction. It is not clear why, but the tooth was not extracted. On June 23, 2021, Poirier received his upper dentures. Dkt. No. 25 at ¶¶116-120.

A little more than a month later, on September 13, 2021, Poirier was placed on the essential waitlist after submitting a dental services request form with complaints of tooth pain. Poirier's initial appointment was missed because he was in quarantine; he was eventually seen on January 21, 2022. This time, Poirier complained about pain in a molar on the lower right side of his mouth. The dentist noted a hole in the side of the tooth, and Poirier demanded that the hole be filled. The dentist explained that the hole was not fillable and stated that the tooth needed to be extracted. The dentist discussed extraction of the molars on the left and right side of Poirier's mouth, but he refused and signed a refusal of recommended care form. Dkt. No. 25 at ¶¶121-126.

On May 2, 2022, after Poirier was transferred to Redgranite, Dr. Rauch received Poirier's dental file and noted that he had no requests for dental treatment pending. Poirier submitted his first dental services request form at Redgranite on July 24, 2022. He complained that he had two teeth that the Waupun dentist would not fill and that were causing him pain. In response, a nurse noted that Poirier was experiencing severe right-side tooth pain and reported having a broken tooth. The nurse did not observe any broken teeth; she also noted Poirier laughing at times during the appointment and observed no facial swelling, drainage, or open areas in the mouth. The nurse noted that Poirier already had Tylenol and that he refused ibuprofen and an ice bag. She gave him orajel and told him to notify the health services unit if his symptoms worsened. The next day, Dr. Rauch placed Poirier on the essential waitlist for evaluation. Dkt. No. 25 at ¶¶129-141.

Dr. Rauch evaluated Poirier about a week later, on August 1, 2022. He took an x-ray and noted Poirier's complaints of pain in the lower left side of his mouth. Dr. Rauch concluded that the condition of Poirier's teeth was chronic and unlikely to change. Poirier requested that he receive fillings, but Dr. Rauch believed that fillings were not a possible treatment option and that extraction was the only available option. Based on his evaluation, Dr. Rauch concluded the tooth on the right side of Poirier's mouth was more problematic. Poirier agreed that the tooth should be extracted. Due to the expected difficulty of extracting this tooth and his hesitation to extract teeth on both the right and left sides of the mouth at the same time, Dr. Rauch decided to remove only the right tooth at this appointment. Dr. Rauch explains that removing the tooth required significant bone removal, and Poirier experienced more blood loss than was expected. But Poirier tolerated the procedure well, was prescribed acetaminophen for pain, and was taken off the essential waitlist. He was advised to submit another dental services request form if he wanted additional care. Dkt. No. 25 at ¶¶147-168.

That same day, Poirier submitted a dental services request form stating that he had just had one tooth extracted and now needed the other tooth extracted. The next day, on August 2, 2022, Dr. Rauch responded that Poirier would be placed on the routine waitlist and should expect about a five-month wait time. Dr. Rauch decided that placing Poirier on the routine waitlist was appropriate because he was not complaining of pain. A few days later, on August 6, 2022, Poirier submitted a dental services request stating that he wanted a filling and an extraction. He stated he needed his teeth fixed because Waupun would not do it. Dr. Rauch kept Poirier on the routine waitlist because, again, he did not complain of pain and his issues were not acute. Poirier submitted his next dental services request on October 30, 2022, stating that his other tooth needed to be extracted because it was painful. In light of Poirier's complaint of pain, nursing staff tried to provide a dental assessment, but Poirier refused and stated he would wait for the dentist. Dr. Rauch responded to Poirier the next day and explained he was on the waitlist and that services are provided in order of request. He also informed Poirier that the delay was due to staff shortages. Because Poirier had refused to see a nurse for his complaints of pain, Dr. Rauch did not believe it necessary to prescribe pain medication. Dkt. No. 25 at ¶¶169-182.

Seven months later, on May 31, 2023, Poirier submitted a dental services request form stating that he had a hole in his tooth that needed to be filled. He requested to see the dentist before the pain got worse. Dr. Rauch again informed Poirier that services were provided in the order they were requested. Dr. Rauch explains that during this time, wait times for services lengthened considerably due to staff shortages. About a month later, on July 24, 2023, Poirier submitted a *health* services request (not a *dental* servicers request) stating two teeth had broken off and he was experiencing pain. A nurse conducted a dental assessment and noted that Poirier was complaining of lower left mouth pain. She also observed rotted teeth on both sides of Poirier's mouth. A doctor

6

ordered an antibiotic, ice/heat, and ibuprofen. The nurse forwarded the request and her notes to Dr. Rauch, and he placed Poirier on the essential waitlist for evaluation and potential extraction. Dkt. No. 25 at ¶¶183-205.

On August 5, 2023, Poirier refused to see nursing staff about his dental pain. Two days later, on August 7, 2023, Dr. Rauch examined Poirier, who was complaining of pain on the lower left and lower right sides of his mouth. Dr. Rauch took x-rays and noted deep decay. He concluded that fillings were not appropriate. Dr. Rauch recommended that two teeth on the lower left side of Poirier's mouth be extracted, and Poirier agreed. Poirier tolerated the procedure well. Dr. Rauch informed Poirier that he needed to submit another dental request form for additional treatment. Poirier expressed frustration at having to submit another request. Dr. Rauch explains that, even when he knows a patient needs additional treatment, the patient is required to submit a new request form so the dental services unit can ensure systematic and fair distribution of dental services. Dkt. No. 25 at ¶¶206-222.

The same day as his extraction, Poirier submitted a dental services request stating that he needed his teeth fixed and dentures. He reported pain and that he could not eat. Dr. Rauch informed Poirier that he was on the essential waitlist. About a week later, on August 14, 2023, Dr. Rauch examined Poirier and advised him that the tooth on the lower right side of his mouth needed to be extracted because it was severely decayed and could not be restored. Poirier refused the extraction and told Dr. Rauch he should offer a root canal for all of his remaining teeth. Dkt. No. 25 at ¶¶223-228.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

7

Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Poirier asserts that Dr. Rauch violated his rights under the Eighth Amendment when he delayed addressing Poirier's complaints of tooth pain and offered extraction as the only treatment option. He further asserts that Health Services Manager Thompson and Warden Gierach demonstrated deliberate indifference to his dental condition when they failed to intervene to address the delay. To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must prove that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). The Seventh Circuit has clarified that, "[w]ithin the universe of deliberate indifference cases is a narrower category when a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for

that condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). These types of cases are "better framed not as deliberate indifference to a serious medical need, but as a challenge to a deliberate decision by a doctor to treat a medical need in a particular manner." *Id.* (internal punctuation and citations omitted). It has long been held that, in such cases, courts must "defer to a medical professional's treatment decision 'unless no minimally competent professional would have so responded under those circumstances." *Id.* Further, it is important to note that a "disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment is generally insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (citations omitted).

The parties agree that Poirier's decayed teeth and accompanying pain were objectively serious conditions. The Court's decision will therefore focus on Dr. Rauch's response to that condition. No jury could reasonably conclude that, based on the information known to Dr. Rauch, he was deliberately indifferent to Poirier's tooth pain. Dr. Rauch first learned that Poirier wanted dental treatment on July 24, 2022. In response to that complaint, which included assertions of pain, Poirier was examined by a nurse and given orajel. Poirier had already been prescribed Tylenol and he refused ibuprofen and an ice bag. The next day, Dr. Rauch prioritized Poirier on the essential waitlist and examined him a week later, on August 1, 2022, at which time he took x-rays. Poirier wanted fillings, but Dr. Rauch informed him that was not a viable treatment option. Consistent with recommendations made to Poirier two years earlier while he was at Waupun, Dr. Rauch identified teeth on both sides of Poirier's mouth that, due to significant decay, should be extracted. Poirier agreed, but given time constraints and concerns with extracting teeth on both sides of the mouth at the same time, Dr. Rauch extracted only the most problematic tooth. Poirier tolerated the procedure well, was given pain medication, and told to submit a request for additional

9

treatment. Thus, Poirier's most pressing issue was addressed within about a week of Dr. Rauch learning of it. No jury could reasonably conclude that such prompt and thorough attention to Poirier's complaints constitutes deliberate indifference.

Poirier immediately submitted a request that the other tooth also be extracted. Notably, unlike Poirier's first request, he made no mention of being in pain. Accordingly, Dr. Rauch placed him on the routine waitlist. Dr. Rauch explains that he is the only dentist at Redgranite, and it is important that dental services be fairly provided to the one thousand inmates who are housed there. Poirier accordingly was added to the list of the many other inmates who needed treatment but were not experiencing pain or other concerning issues. Nearly three months later, on October 30, 2022, Poirier first indicated that his tooth was causing him pain, but he refused to see a nurse who could have provided him with options for pain relief while he waited. Dr. Rauch also responded to Poirier and explained that services were provided in the order requested and that delays were longer than normal due to staffing shortages, over which Dr. Rauch had no control. Seven months passed, and Poirier raised no complaints about his teeth. On May 31, 2023, Poirier asked that the hole in his tooth be repaired before the pain got worse. Dr. Rauch again responded, explaining that wait times had lengthened significantly due to staff shortages. He again confirmed that inmates received treatment in the order requested.

Finally, about a month later, Poirier escalated his complaints, stating that two teeth had broken off and he was in a lot of pain. In response, Poirier received an antibiotic, ice/heat, and ibuprofen. Dr. Rauch also moved Poirier from the routine waitlist to the essential waitlist. He examined Poirier on August 7, 2023, took x-rays, and again noted deep decay. As he had before, he concluded fillings were not appropriate. With Poirier's agreement, he extracted two teeth on the left side of Poirier's mouth.

The Court acknowledges that a year is a long time to wait for dental treatment, but no jury could reasonably conclude that the delay was a result of Dr. Rauch's deliberate indifference to Poirier's condition, nor could a jury reasonably conclude that Dr. Rauch was deliberately indifferent to Poirier's condition during the delay. With regard to the cause of the delay, it is undisputed that Redgranite experienced a significant staffing shortage over which Dr. Rauch had no control. *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) ("defendants cannot be thought to be reckless if the remedial step was not within their power"). Given the overwhelming needs of the inmates and the limited resources available to meet those needs, Dr. Rauch was forced to make difficult decisions when triaging an inmate's request for treatment. Categorizing needs based on the severity of the symptoms described and addressing requests in the order they were received is not a demonstration of deliberate indifference. It is a thoughtful and reasonable way to ensure dental services are fairly distributed amongst the inmate population, and Poirier offers no evidence to suggest that the Court should not defer to Dr. Rauch's judgment on this issue. *See Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014) (holding that "a medical professional's treatment decisions will be afforded deference unless no minimally competent professional would have responded as such under the circumstances").

Further, with regard to Poirier's complaints of pain while he waited for treatment, the undisputed record shows that Poirier initially refused to see a nurse who could have provided him with pain relief options and, once his symptoms became more severe, he was provided with antibiotics to treat a possible infection, ice/heat, and ibuprofen. He also was moved from the routine waitlist to the essential waitlist and examined two days later, at which time two more teeth were extracted. Considering the totality of the care Poirier received in response to complaints of worsening symptoms, no jury could reasonably conclude that Dr. Rauch was deliberately

11

indifferent to Poirier's pain. Poirier was unhappy with having to wait, but "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The only reasonable conclusion a jury could reach based on the undisputed evidence is that Poirier received adequate care, which is all the Constitution requires.

Finally, on August 7, 2023, Poirier submitted a dental services request demanding that his remaining teeth be fixed. He noted that he was in so much pain that he could not eat. Dr. Rauch placed him on the essential waitlist and examined him a week later. Dr. Rauch confirmed that extraction was the only available treatment option for Poirier's decayed tooth. Poirier refused and instead demanded a root canal. As is the case with Dr. Rauch's other treatment decisions, no jury could reasonably conclude that Dr. Rauch was deliberately indifferent to Poirier's condition. "Under the Eighth Amendment, [a plaintiff] is not entitled to demand specific care. [He] is not entitled to the best care possible. [He] is entitled to reasonable measures to meet a substantial risk of serious harm to [him]." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Poirier has offered no evidence calling into question Dr. Rauch's opinion that the tooth could not be restored with a filling. And, although medical personnel cannot resort to an easier course of treatment that they know is *ineffective*, they may take costs of treatment into account when determining what constitutes adequate, minimal-level care. *Johnson*, 433 F.3d at 1013. No evidence suggests that extraction would be ineffective to address Poirier's complaints, and Poirier's desire for a different treatment, without more, is insufficient to support a finding of deliberate indifference. *See id.*

A few closing thoughts: Poirier highlights that he had all of his teeth when he came to prison and has been asking for treatment since 2004. He asserts that he was given the runaround until his teeth could no longer be saved. Dkt. No. 34 at 3, 6. But there is no vicarious liability

12

under §1983, so Dr. Rauch will not be liable for the alleged misconduct of others. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (explaining that "vicarious liability is inapplicable to . . . § 1983 suits"). It is undisputed that, by the time Dr. Rauch examined Poirier, his teeth were badly decayed and could not be restored. Poirier also explains that he refused nursing visits where additional pain relief could have been offered because he did not want to pay the $7.50 copay. But it has long been held that it does not violate the Constitution for prisons to charge a fee for medical services or over-the-counter medications so long as the prisoner has the ability to pay. *See Poole v. Isaacs*, 703 F.3d 1024, 1026-27 (7th Cir. 2012). Poirier bears the consequences of his decision to conserve resources rather than take advantage of available pain relief. Finally, Poirier asserts that he can provide evidence that the delay caused him harm—he states that he has "6-more broken off teeth" that he can present as evidence. But, as already explained, Poirier offers no evidence that Dr. Rauch was responsible for causing the delay at Redgranite or had any authority to remedy the delay. And, also as noted, by the time Dr. Rauch examined Poirier, the damage was done—the undisputed evidence demonstrates that his teeth were so decayed that extraction was the only available treatment option. For all these reasons, Dr. Rauch is entitled to summary judgment.

Health Services Manager Thompson and Warden Gierach are also entitled to summary judgment because no jury could reasonably conclude they had any personal involvement in the alleged violation of Poirier's constitutional rights. The undisputed evidence shows that neither Thompson nor Gierach had any control over how Dr. Rauch scheduled patients or designated which waitlist they should be assigned to. Further, neither of them had control or authority over the employment of dental staff or the staffing levels of dental staff at Redgranite. Dkt. No. 25 at ¶¶253-258. As explained, a defendant cannot be found to be reckless if the needed remedial steps are not within his or her power. *See Miller*, 698 F.3d at 962; *Burks v. Raemisch*, 555 F.3d 592,

595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). Also, neither Thompson nor Gierach has any dental experience or had authority to conduct dental procedures in response to Poirier's requests. Dkt. No. 25 at ¶¶256, 286. Accordingly, having confirmed that Dr. Rauch was not ignoring Poirier, Thompson and Gierach were entitled to defer to Dr. Rauch's judgment regarding how and when to treat Poirier's condition. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (noting that "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so"). Accordingly, Thompson and Gierach are also entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendants' summary judgment motion (Dkt. No. 22) is **GRANTED** and this action is **DISMISSED**. The clerk of court is directed to enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 21st day of November, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge

This order and the judgment to follow are final.  Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment.  *See* Fed. R. App. P. 3, 4.  This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline.  *See* Fed. R. App. P. 4(a)(5)(A).  If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome.  If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court.  *See* Fed. R. App. P. 24(a)(1).  Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious.  *See* 28 U.S.C. §1915(g).  If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury.  *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b).  Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment.  Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment.  The Court cannot extend these deadlines.  *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.